Good morning, Your Honors. Thomas John Trigo for the petitioner, Ms. Liang. In this case, the petitioner had left China, stated why she left China, and testified consistently to her arrest, her detention, and why she fears returning back to China on direct. However, on cross and through the judge's questioning, the judge, under CESRA, was cherry-picking negative factors that would insulate a negative credibility finding. The first factor that the judge looks towards in insulating her negative credibility finding was that she said that the business license expired at the end of June 2005. This is inconsistent with her testimony that she was still running and owning a business in July 2005. If these facts are true, this would actually be consistent. This is in her page in her decision at 67. Right, the license could have been expired, and she could have continued to operate the business. Right, but she says that the actual business license expires at the end of the year, but actually her license expired actually in June, so that would be a consistent fact that she still was operating a business with a license that wasn't expired. But if not, why didn't the judge consider when the petitioner paid 200,000 yuan for a space on the second floor in the middle of January 2005, then at the end of April, beginning of May 2005, they asked her to move, which she still had a valid license in the middle of June. After May, when she moved, she operated the business for a month, and then at the end of May, they wanted to collect 7,000 yuan for rent. When they all refused, all the people who were working on the second floor refused to pay the 7,000, they basically went to go complain to the business administration department and their superiors. However, these superiors told them, if you don't pay the 7,000 yuan, we're going to stop. They would literally at this point, at the end of May, beginning of June, they could not operate their businesses. This is what they were told, and this is on page 130 of the record, lines 13 to 23. So at this point, she was not physically able to operate her actual business. So this is a relevant fact that the judge did not consider to show that she was not allowed to operate this business, and that pretty much at the end of 2000, actually when she was arrested in July of 2005, on July 12th, that the physical location was shut down. So the judge required Hart to actually produce documents to show that she was still operating after June of 2005. Well, how is that possible if she was not allowed to operate her business at the end of April, beginning, actually at the end of May, when she was required to pay the 7,000? And they said, well, we're not going to let you operate unless you pay it. So at this point, she went to go complain. She wasn't operating her business. So basically she testified consistently to these facts. So where's the inconsistency then? There really isn't. So at this point, then the judge requires her to have documents pertaining to this. And under Lye quoting ZHI, IG must provide an otherwise credible applicant such as Lye with notice and opportunity to either produce the evidence or explain why it's not available. Well, it's not available because she explained in her answer, they didn't let us operate. And then they finally, when they arrested me, shut me down. So what documents would she provide after June that she was still operating the business? There wouldn't be. That's one of the major factors that you're looking at that she insulates her negative credibility finder. She goes on with six more. And I can go through with them. But there's only one other that I think raises a serious concern, and that's when she's trying to get her passport. Okay. Well, again, she explains the process in China. She explains that getting an ID document such as a passport is not the same process if you're moving and that basically unless you're sentenced to a crime, then you're entitled to get a passport. Well, so the concern was that she had been ordered to report into the police part, the police unit or whatever it might be called in China. Correct. On a weekly basis, right? Correct. But she goes, so they're aware of her supposedly, you would think, at the police department. Right. So when she goes to the police station or building or whatever it's called to get her passport, right? She goes and she delineates that it's a different department inside there that she goes to get her passport. But she's saying that everybody's entitled to get a passport unless you're sentenced or criminally charged. She was never criminally charged. So what would be, there's a big difference between monitoring someone who's causing trouble in the country, why they're making her report, versus somebody getting another identity document. And that's what she's trying to establish in saying why I'm entitled to get my passport. It's an ID document other than my household registry, other than my ID card. So getting a passport, how would that cause her any problems on the fact of where she is and who she is and that it's an ID document? It's not only just meant for travel, the passport. Did she testify to that? She testified that she didn't have pretty much at that point a right, she had a right to go get her passport and she wanted to. But she wasn't availed this question on direct, on cross. Why did you get your passport? It was never raised. So with further fact finding, if it is remanded back down, this is something that I think should be explored. Because and also provide evidence to show that there is laws from China that says that unless you're physically charged or criminally charged or sentenced, that you are entitled to get a passport. How long has Ms. Liang been here? She's been here since I believe 2005. And how old is she today? She's in her close to, I would have to say back then she was in her close to 60, 65. Today or she's 75? I think she's like 75 today. So in this instance. So at this point, there's other factors that the judge uses to negatively, the negative factors to insulate a negative credibility finding. One of them, she doesn't accept the explanation of why she doesn't have ownership documents. One of those documents, because she said, after I was arrested, I wasn't allowed to go back. You mean of her business? Her business, right. It was closed down. She said, and consistently with no pause, first I gave it to my husband. Then we had, then it was put into my business in a desk. So I don't see how that explanation is not plausible and why it should not be accepted as a positive factor in deciding credibility. Then the judge goes on to say that, well, the household registry number and the ID card number and the passport number don't match. Well, that's actually incorrect because the passport number and the ID card number actually match. It's the household registry that adds two numbers, and the attorney tries to explain on the record without, again, uncross or through the judge raising these issues, didn't have notice and opportunity under Wren or ZHI to provide evidence. And if given that opportunity, because if you look at when Wren was decided and when ZHI was decided, ZHI was decided in 2014 and Wren was in 2010. This case was pretty much in the beginning of 2011. So I don't know if the judge knew whether or not about Wren. So if the judge gave her opportunity to notice, I'm quite sure she can show, the attorney could show, that there is a new process out there. Which is even more important is that the judge didn't consider the fact that government, on April 15, 2008, took all the documents into custody for forensics. They say, okay, we need 15 months. Fifteen months. Judge resets the case from April, and I have the proceedings, resets it to a trial, but then sets it to a master because she's on a detained docket. She says, well, we can't do it on that day. I have a detained docket. So she brings them back, brings back everybody, I believe, I have it in the record, in November of 2008. There, they basically say, okay, we need 13 more months. We just submitted the documents in October to verify. In total, the government had these documents for 34 months. So let's do the math. If you have these documents as of November of 2008, that would make it December of 2009. Well, in 2010, the judge reset the case twice because she had older cases to do. She set it on January 19, reset it to September, I believe, September 15. On those two occasions, never did the judge ask or request, where is this forensic report? I gave you a continuance, and they requested a continuance as well. So government attorneys in that case should have a report. So let's look if those documents. Your time is just about up, so make your last point. My last point is that if given an opportunity, there is compelling enough evidence to remand this case back down in order for a fair fact finding on de sestra in order to give determined credibility. How much time did she spend in prison after she was arrested? How much time was she in that prison? She was in prison 15 days. What did they do to her? They actually interrogated her twice, one for three hours. They actually would question her and beat her and then left her alone because they got tired of questioning her. They would what to her? They would beat her. Beat her. Beat her in the first one. For three hours, they stopped on and off asking questions and did beat her. Then the next day, for two hours, the same officers beat her again and said, do not go back and tell the rest of those business people that we're corrupt, that what we're doing is corrupt. So at that point, she was there and then was released on a 10,000 RMB fine.  Thank you, Your Honors. We'll hear from the government. May it please the Court, Matthew George for the Attorney General. The totality of the circumstances in this case does not compel the conclusion that Petitioner is credible. The agency identified seven specific and cogent inconsistencies and discrepancies. Even if these are so-called minor inconsistencies and discrepancies, when aggregated and viewed in light of the total circumstances, they undermine Petitioner's credibility. They are not trivial in that they concern Petitioner's identity and the existence of her business. The record does not compel the agency to accept Petitioner's, or in some cases solely and purely her counsel's, excuses and explanations, some of which coming directly from Petitioner, are little more than I don't know why this is inconsistent. The Court must consider all of the inconsistencies in the totality. There are seven, but they must be considered together. However, just practically, we must go through them one by one. The first relates to the closure of Petitioner's business. She testified that the government closed it in July of 2005. Despite her business license saying it expires on June 31, 2005. She testified that she had to have her business license on her business location at all times. Her explanation for the inconsistency of why she had an expired business license was that the government, the Chinese government, renewed business licenses in December, issued things after the Spring Festival, which would be consistent with the issuance in April of 2000 of her business license. However, she failed to explain why her license was not reissued in 2005 due to its upcoming expiration. She also explained that the government does things arbitrarily. Quoting her, what time they want to issue this kind of stuff, we wouldn't have a say in it. And that's at page 128 of the record. She then explained that these policies were decided by them whenever they say. She was also nonresponsive to questions about this issue on pages 128 to 131. Did she have the services of an interpreter? In other words, she testified through an interpreter, not directly in English, right? That's correct. There, the attorney cross-examining her twice had to tell her that what she was talking about had nothing to do with the question that was being asked. And basically, that was a substance of a cross-examination question both on page 129 and at page 131. She was twice informed that what she was talking about had nothing to do with the question that was asked. Her next inconsistency has to do with her own statement that the business license must specify the floor on which the business was located. Looking at the face of the license, it does not have a floor on it. That was not something that the government or the immigration judge brought up or raised. That was her own testimony that the floor would be on the license. When she was then asked to explain why it does not have the floor, she changed her explanation to say it would only have the address. So why is that such a big deal? Because it goes to whether her business existed, Your Honor, whether this license shows that she actually was in operations. Are you saying she never had a business? That's one possibility. Actually, the agency found her not credible, so it chose not to believe. She never had a business in that facility? That's one possible. Is that the government's position? The position is that her testimony is not worthy of weight. She's not credible. So what she's testifying to is not worthy of weight. No different than, say, a jury chooses not to give weight to a witness's testimony in any sort of trial. And that's a good point to look at this adverse credibility finding. It's more like a jury saying, look, these inconsistencies, they may seem small, looked at one by one, but looking at them together as they're building up. What did we have to gain by taking a 75-year-old woman who's been here for over 10 years, never created any problems, been, according to her testimony, been beaten up in China, spent 15 days in prison there, and all these other restrictions. What do we as a country gain by kicking her out? Why do we want to do that? I mean, you say the Attorney General wants to do that? Have you talked to the Attorney General about this? I have not personally spoken to the Attorney General. So you don't know what's in the Attorney General's mind? Her personally, no. She has delegated her authority to the agency decision-makers who have decided this case. And this case is about enforcement of immigration laws. The petitioner here conceded that she has violated immigration laws by overstaying her visa. Now, it may seem whatever concerns the court may have in this individual case, but the Attorney General is tasked with enforcing the overall system. And so if we are not adhering to that system consistently and fairly in each case, it undermines the entire system. Counsel mentioned a substantial continuance given at the government's request to conduct forensic testing, and you alluded earlier to a possible theory that perhaps she never had the business at all. Was there any evidence presented of any forensic testing on these documents done by the government? Not that I'm aware of, Your Honor. I don't believe that's in the record. It's not really about whether these documents are genuine and authentic. That's not the finding the agency made. It's more about looking at the documents and comparing them to what she testified to. She's saying one thing, for example, with regard to the floor of the business. She herself is saying the license would have the floor on it, and then we're looking at what she's saying is her actual license, and it doesn't have a floor on it. So why is that a big deal? People make little mistakes all the time. Absolutely, Your Honor, but there's seven of them that the agency pointed to here. These things build up. As the Court has stated in Shrestha, an aggregation of even so-called minor inconsistencies and discrepancies when aggregated does undermine credibility, and that's as we think about any sort of credibility. I understand the ritual and all that, but I'm looking at it one by one. Well, that's not really the way the statute directs the agency and the Court to evaluate that assessment. Well, you just started on number one, didn't you? Okay, so let's go to the other. Very good, Your Honor. I'll move on to the additional five, I believe. The next one is that the Household Registry does not list her current business, despite it was issued in 2004. It still lists a business she worked for, and she testified that she was terminated from in 1991. Her explanation was that the House Registry was not permanent and that freelance work is not listed on it. Now, this is in conflict with the fact that it was issued in 2004. It's still listing an occupation she had in 1991. The next one is that she paid the 200,000 yuan for her business but had no receipt. This is another fact she herself brought up. She said that they did not—first she testified they did not provide any sort of receipt. Then later she said, oh, yes, I did receive a note that said how much and the number for the booth. And then she testified, oh, no, I do have a note or receipt, and it was in my business. I can no longer get to it because that business is no longer accessible to her. But it's an inconsistency in that she first said it didn't exist. Now she says it does. The next document is her son's birth document, where it states that she was 43 when at that time she would have been 49. Her explanation was simply, this is a mistake, and I don't know why it's inconsistent. That document goes to her identity, showing who is she. The next one is the discrepancy between the number on her identification card and her household registry. A more recent document, her passport, has the same identification number as her ID card, whereas the household registry was issued between those two documents with a different number. Her explanation was, it should be the same, so if it's that, I don't know, it should be the same. She provided herself no actual evidence or testimony regarding that explanation. Her attorney provided some speculation about why those numbers are different. Those numbers are pretty close, though, aren't they? They're close, however, they're not very close. They're only off by two digits. They are only off by a few digits, however. If you add in the two digits they suggest, it's just a year. There's no evidence for that. That really seems like a minor, minor inconsistency. In totality with all of the others, it builds up, Your Honor. The seventh one, again, as the Court has already asked my opponent about, the receiving the passport from the police station, whereas she's testified that the police were having her check in and were aware of her ICI. Let me ask you, is there any consideration to mediating this or see if there was something that could be done? Yes, Your Honor. When the Court issued its notice, I believe back in October, we did take it back to the agency and they declined to exercise any sort of discretion in this case. Do you know, is the government actually, is China actually accepting returnees? A very small number of them, yes. I have seen some deported to China. It's not a very large number. Right, they don't seem to accept them back. Generally, they don't. And if they were not to accept Ms. Liang back, what happens to her here in the United States? She is just here simply with no status, with a removal order that the agency can execute when and how it sees fit. If China ever decides to accept her back. If. Does anybody in that position get a refugee status or a work permit, work authorization? Under the current facts of the case or the status of the case, no. So they're just here under a removal order and that's it? Yes, Your Honor. Yes. Okay. Thank you. I'll give you a minute for rebuttal. Thank you, Your Honor. And to actually go over the issue that counsel had raised, the major issues, such as it designating the second floor versus the third floor, which is kind of minor, and the birth certificate. Here's a document that's being offered to show a relationship between her and her son, not purporting anything towards her claim. So it was issued by someone at a hospital, which her husband went to go get, and she doesn't know why the mistake was. As far as the other issues that we've seen that are the six of them, the major one that I see that the judge fails to actually address is basically that the documents were taken into custody, and these documents would have shown authenticity of the business license. I mean, all of them were taken in on April 15th. There was about 15 documents taken in, plus her household registry, her ID, the business license. All of these were original documents that were taken in. If given that chance and remanded back down, I'm quite sure with this report would prove that these are real documents. And if had a chance, these minute actual inconsistencies were not looked at in the totality of the circumstances as I raised, in raising the fact that when she was issued the business license between the second and third floor, she thought she was explaining she had more property rights now, and that they would have to issue saying that this license is going to say, I own this portion now. Whereas before, there's a distinction that she only was renting it. And she established in the record more so that there was more corruption going on every month. I mean, she proved consistently. Thank you, Your Honors. Thank you, Counsel. The matter is submitted at this time.
judges: Pregerson, Paez, Nguyen